

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-7-2006

# Progressive N Ins Co v. Gondi

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-4369

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Progressive N Ins Co v. Gondi" (2006). *2006 Decisions.* Paper 1632.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1632

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 04-4369

PROGRESSIVE NORTHERN INSURANCE

Appellant

v.

MIDHAT S. GONDI

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 04-cv-02034)
Magistrate Judge: Hon. Jacob P. Hart.

Argued November 7, 2005

Before: ROTH, FUENTES and GARTH, Circuit Judges.

(Filed February 6, 2006)

AMENDED OPINION OF THE COURT

Carol Ann Murphy, Esquire (Argued)
Matthew J. Zamites, Esquire
Margolis Edelstein
601 Walnut Street, 4th Floor
The Curtis Center
Philadelphia, PA    19106

Counsel for Appellant

Richard M. Golomb, Esquire
Ryan J. Durkin, Esquire (Argued)
Golom & Honik
121 South Broad Street
9th Floor
Philadelphia, PA 19106

Counsel for Appellee

**ROTH**, Circuit Judge:

Progressive Northern Insurance Company has appealed the grant of summary judgment to Midhat S. Gondi to recover damages for pain and suffering under the Uninsured Motorist (UM) provision of his insurance policy. We have jurisdiction over this appeal from the District Court's final order pursuant to 28 U.S.C. § 1291. The undisputed factual history of this case is well-known to the parties and is briefly summarized below.

## I. Factual Background

On May 13, 2003, Gondi decided to pick up food at a restaurant in Philadelphia. He drove to the restaurant in his 2000 Toyota Corolla and parked the car near the entrance. Gondi ran into the restaurant, leaving the car keys in the ignition, the engine running, and the car unattended. While in the restaurant, Gondi saw someone stealing his car. Gondi attempted, unsuccessfully, to stop the theft. In the process he was struck by his own vehicle and sustained serious injuries.

Gondi had automobile insurance with Progressive. Progressive paid for Gondi's medical expenses and the loss of the car. Gondi, however, also sought to recover for his

pain and suffering under the Uninsured Motorist (UM) provision of the Policy because the accident was the fault of an unknown individual not known to have insurance.

> The Policy's UM coverage provision states:

> Subject to the limits of liability, if you pay the premium for Uninsured Motorist Coverage, we will pay for damages other than punitive or exemplary damages, which an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury . . .

> (3) arising out of the ownership, maintenance or use of an uninsured motor vehicle.

The Policy also notes that:

> An "Uninsured motor vehicle" does not include any motorized vehicle or equipment:
> a. owned by you or a relative; . . .
> g. shown on the Declarations Page of this policy.

Gondi owned the 2000 Corolla and listed it on the Policy's Declarations Page. Therefore, the Corolla was not an uninsured motor vehicle under the Policy.

Citing the terms of the Policy, Progressive refused to pay for Gondi's pain and suffering damages. Gondi responded by filing a claim in the Delaware County Court of Common Pleas to compel arbitration under the Policy's UM Arbitration provision. Progressive then filed suit in the U.S. District Court for the Eastern District of Pennsylvania under 28 U.S.C. § 2201 for Declaratory Judgment that it had no UM coverage obligations for Gondi's claim. The District Court had jurisdiction pursuant to 28 U.S.C. § 1332 because of diversity of citizenship. Gondi's state court action has been held in abeyance pending the outcome of this appeal.

3

In the District Court, the parties filed cross-motions for summary judgment, as to both the UM benefits and Gondi's entitlement to a UM Arbitration Hearing. The Magistrate Judge granted Summary Judgment to Gondi as to the UM benefits (making the Arbitration Hearing unnecessary) and denied Progressive's cross-motion.[1] The Magistrate Judge found that the Policy was unambiguous and that Gondi was precluded from recovery under its terms but that denial of coverage would be contrary to the public policy underlying Pennsylvania's Motor Vehicle Financial Responsibility Act (MVFRA), 75 PA.CONS. STAT. § 1701. Progressive appealed.

## II. Analysis

The parties agree that Pennsylvania law governs their dispute and that under the plain language of the Policy Gondi is not entitled to recover. Thus, the sole issue before us is whether the Policy's UM exclusion is void as against Pennsylvania's public policy.

Under Pennsylvania law, "[g]enerally, courts must give plain meaning to a clear and unambiguous contract provision unless to do so would be contrary to a clearly expressed public policy." Burstein v. Prudential Prop. & Cas. Ins. Co., 809 A.2d 204, 206 (Pa. 2002).

> Public policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest. As the term "public policy" is vague, there must be found definite indications in the law of the sovereignty to justify the invalidation of a

---

[1] On August 19, 2004, the District Judge, with the parties' apparent consent, entered an order referring the case to a Magistrate Judge to conduct any and all proceedings. *See* 28 U.S.C. § 636(c).

4

contract as contrary to that policy. . . . Only dominant public policy would justify such action. In the absence of a plain indication of that policy through long governmental practice or statutory enactments, or of violations of obvious ethical or moral standards, the Court should not assume to declare contracts . . . contrary to public policy. The courts must be content to await legislative action.

Id. at 207.

The MVFRA is the sole relevant point of reference for public policy related to UM coverage questions. Id. at 207-208. The policy ensconced in the MVFRA is one of "legislative concern for the spiraling consumer cost of automobile insurance and the resultant increase in the number of uninsured motorists driving on public highways." Id. at 209 n.3. Therefore, the question is whether upholding the UM coverage exclusion in the Policy would result in higher costs of insurance and/or more uninsured motorists. In Pennsylvania, "the application of public policy concerns in determining the validity of an insurance exclusion is dependent upon the factual circumstances presented in each case." Id. at 207. Accord Paylor v. Hartford Ins. Co., 640 A.2d 1234, 1240 (Pa. 1994).

The District Court found it "repugnant when faced with the facts of this case to deny Mr. Gondi coverage" and reasoned that to do so would be against the public policy of Pennsylvania:

The stated purposes of the MVFRA are to bring down the cost of auto insurance and decrease the number of uninsured drivers on the roads. Here, in his attempt to stop the theft of his car, which loss would be covered by his comprehensive coverage, Mr. Gondi was hit and injured. Had he been successful in his attempt, he would have saved his insurance company the claim for the loss of the car. Thus, enforcement of the exclusion runs afoul of the first stated purpose. In addition, enforcement of the exclusion would result in a premium-paying, fully insured driver, being denied coverage for his injuries. This is certainly no

5

incentive to insure one's vehicle.

We conclude that the District Court erred in holding the UM coverage exclusion void per public policy.

The stated policies underlying the MVFRA are too generalized to be of much help in determining if the UM exclusion in Gondi's Policy violated Pennsylvania's public policy. In addition, Pennsylvania case law provides little guidance for this appeal,[2] and the generic goals of lowering the cost of insurance and decreasing the number of uninsured drivers simply provide insufficient direction for us to disregard the clear, unambiguous language of the Policy.

The District Court asserted that Gondi should not be penalized for attempting actions that, if successful, would have saved the insurer money and that excluding Gondi from coverage would create a disincentive for auto owners to attempt to stop the theft of their cars, which would in turn raise the costs of insurance.

We disagree with this analysis. First, denial of insurance coverage is only a penalty if there was a legitimate expectation of such coverage. If Gondi did not bargain for the UM coverage in this case, as the terms of the contract indicate, it would hardly

---

[2] The existing cases either address underinsured motorist coverage, which has different policy concerns about parity of coverage, see, e.g., Stelea v. Nationwide Mut. Ins. Co., 830 A.2d 1028 (Pa. Super 2003), Paylor, 640 A.2d 1234; deal with UM coverage without addressing public policy concerns, see Parsons, 484 A.2d at 193 (Pa. Super. Ct. 1984), or are diversity cases themselves that merely make conclusory statements as to whether particular UM exclusions are void per public policy without supporting analysis or citations, see State Farm Mut. Auto. Ins. Co. v. Sinsel, 2000 U.S. DIST. LEXIS 16428, at *8 (E.D.Pa. Nov. 6, 2000).

create a disincentive to deny him coverage. Instead, we simply deny him an unexpected windfall.[3] Second, to the extent that denying Gondi coverage creates a disincentive, it is just a disincentive to attempt to stop auto theft by jumping in front of the car. One of the reasons people have auto theft insurance is so they will not have the pressure of having to risk physical injury to protect their car. Insurers might well want this disincentive because the likelihood of serious bodily harm in physical attempts to stop auto thefts in progress might outweigh the insurers' loss from the stolen car.

Moreover, denying Gondi coverage creates an incentive for taking more effective common-sense measures like not leaving a car unattended, unlocked, with keys in the ignition and the engine idling. We cannot read Pennsylvania generic public policy as requiring that Gondi's last minute heroics be rewarded when they were only necessitated by his own carelessness. Gondi was hit by his own car during the course of the theft that he had effectively facilitated. We do not think that the public policy of Pennsylvania mandates that Gondi's insurance cover such a situation.

We conclude, therefore, that the District Court erred in holding that the UM coverage exclusion at issue in Gondi's Policy with Progressive was void under the public policy of Pennsylvania. Under the clear terms of the Policy, Gondi did not have coverage and summary judgment should have been awarded in favor of Progressive.

---

[3] Notably, some auto insurance policies available in Pennsylvania have excluded non-permissive use from the UM exclusion for owned or declared vehicles. See Parsons v. State Farm Mut. Auto. Ins. Co., 484 A.2d 192, 193 (Pa. Super. Ct. 1984).

7

Accordingly, we will vacate the judgment of the District Court and remand this case to the District Court to award judgment to Progressive.