STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff-Appellee, v. JENNIFER VILLICANA, Defendant-Appellant.

Second District    No. 2—96—0405

Opinion filed March 13, 1997.

W. Randal Baudin, of McCuaig, Haeger, Bolz, McCarty & Baudin, of West Dundee, for appellant.

James J. Hoffnagle and Frank C. Stevens, both of Taylor, Miller, Sprowl, Hoffnagle & Merletti, of Chicago, for appellee.

JUSTICE RATHJE delivered the opinion of the court:

Defendant, Jennifer Villicana (Jennifer), appeals from an order of the circuit court of McHenry County granting summary judgment to the plaintiff, State Farm Mutual Automobile Insurance Company (State Farm).

On appeal, Jennifer raises the following issues: (1) whether the exclusion contained in the State Farm insurance policy at issue violates public policy; (2) whether an ambiguity in that policy exists; and (3) whether the case authority relied on by State Farm in support of its motion for summary judgment is distinguishable or is, in

fact, supportive of the invalidity of the exclusion contained in the policy.

The facts of this case are not in dispute. Jennifer was a passenger in a 1990 Ford Mustang being driven by Jay Rebscher when the Mustang went off the road and crashed into a tree. As a result of the accident Jennifer sustained personal injuries.

The Mustang was owned by Bernard J. Villicana, Jr., Jennifer's father. Mr. Villicana had insured the Mustang with State Farm under an automobile policy which provided bodily injury "liability" and "underinsured" limits of $100,000 per person/$300,000 per occurrence. Under a separate policy with State Farm, Mr. Villicana insured his 1990 Buick LeSabre. That policy provided "liability" and "underinsured motorist coverage" limits in the sum of $250,000 per person/$500,000 per occurrence. Mr. Rebscher had insurance coverage on his own vehicle (not involved in the accident) through Coronet Insurance Group (Coronet) with bodily injury "liability" limits in the sum of $20,000 per person/$40,000 per occurrence.

State Farm paid Jennifer the $100,000 limit of liability coverage on the Mustang. Jennifer also received the $20,000 limit of liability coverage from Coronet, Mr. Rebscher's insurer. However, due to the amount of the damages she incurred, Jennifer filed a claim with State Farm under Mr. Villicana's Buick's "underinsured" coverage. State Farm denied her claim and filed the instant declaratory judgment action maintaining that its "Underinsured Motor Vehicle—Coverage W" did not provide coverage to Jennifer. That portion of the policy on the Buick provided as follows:

"UNDERINSURED MOTOR VEHICLE—COVERAGE W

You have this coverage if 'W' appears in the 'Coverages' space on the declarations page.

We will pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an underinsured motor vehicle. The bodily injury must be caused by accident or use of an *underinsured motor vehicle.*

\* \* \*

Underinsured Motor Vehicle—means a land vehicle:

1. the ownership, maintenance or use of which:

a. is insured or bonded for bodily injury at the time of the accident; and

b. has resulted in bodily injury of an insured; but

2. the limits of liability for bodily injury liability:

a. are less than the limits you carry for underinsured motor vehicle coverage under this policy; or

b. have been reduced by payments to persons other than an insured to less than the limits you carry for underinsured motor vehicle coverage under this policy.

An **underinsured motor vehicle** does not include a land motor vehicle:

1. insured under the liability coverage of this policy;

2. furnished for the regular use of **you, your spouse** or any **relative**;

3. owned by any government or any of its political subdivisions or agencies;

4. while located for use as premises; or

5. designed for use mainly off public roads, and not able to be licensed for public road use. This does not apply while the vehicle is on public roads."

The policy also provides the following definitions:

"**Relative**—means a **person** related to **you** or **your spouse** by blood, marriage or adoption who lives with **you**. It includes **your** unmarried and unemancipated child away at school.

**Spouse**—means **your** husband or wife while living with **you**.

**You** or **Your**—means the named insured or insured shown on the declarations page."

In its declaratory judgment action, State Farm contended that because the Mustang involved in the accident was "furnished for the regular use of" Mr. Villicana and Jennifer, there was no underinsured coverage applicable to Jennifer's claim under the Buick policy. Jennifer answered the complaint, alleging that the above exclusion violated the public policy underlying underinsured coverage, as mandated by section 143a—2(4) of the Illinois Insurance Code (215 ILCS 5/143a—2(4) (West 1994)).

Both State Farm and Jennifer filed motions for summary judgment. The trial court granted State Farm's motion for summary judgment. This appeal followed.

Summary judgment is proper when the pleadings, affidavits, and other documents on file, construed in favor of the nonmovant, show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 113 (1995). We review the entry of summary judgment *de novo*. *In re Estate of Hoover*, 155 Ill. 2d 402, 411 (1993).

There are no facts in dispute in this case. We note that the parties are in agreement that the above-recited policy exclusion, if valid, would deny Jennifer the underinsured coverage benefit under the Buick policy. However, Jennifer contends, as she did in the trial court, that the language of the exclusion violates Illinois public policy. Furthermore, both parties submit that this policy provision has never been construed by an Illinois court. Therefore, both parties rely heavily on cases from other jurisdictions.

■ We begin by examining the pertinent provisions of the Illinois Insurance Code (Code) (215 ILCS 5/1 *et seq.* (West 1994)). Section 143a—2(4) of the Code provides that automobile insurance policies must provide underinsured-motorist coverage in an amount equal to the total amount of uninsured-motorist coverage. 215 ILCS 5/143a—2(4) (West 1994). The Code defines an "underinsured motor vehicle" as

> "a motor vehicle whose ownership, maintenance or use has resulted in bodily injury or death of the insured, as defined in the policy, and for which the sum of the limits of liability under all bodily injury liability insurance policies *** is less than the limits for underinsured coverage provided the insured as defined in the policy at the time of the accident. The limits of liability for an insurer providing underinsured motorist coverage shall be the limits of such coverage, less those amounts actually recovered under the applicable bodily injury insurance policies." 215 ILCS 5/143a—2(4) (West 1994).

The purpose of section 143a—2(4) is to place the insured in the same position he would have occupied if the tortfeasor had carried adequate insurance. *Sulser v. Country Mutual Insurance Co.*, 147 Ill. 2d 548, 555 (1992). Section 7—203 of the Illinois Vehicle Code (625 ILCS 5/7—203 (West 1994)) requires insurance coverage for bodily injury/death in the minimum amount of $20,000 for one person and $40,000 for two people in any one motor vehicle accident plus minimum coverage of $15,000 for injury or destruction of property of others in any one motor vehicle accident. In the case of underinsured coverage, under section 143a—2(4), the coverage must be equal to the total amount of uninsured-motorist coverage provided in the policy, where the uninsured coverage exceeds the limits set forth in section 7—203.

Given that this is a case of first impression and while both parties have submitted an extensive list of cases from other jurisdictions, we, nevertheless, believe that we can resolve this issue utilizing authority from this jurisdiction. Both parties have cited with favor *Luechtefeld v. Allstate Insurance Co.*, 167 Ill. 2d 148 (1995). Although this case deals with uninsured-motorist coverage, we believe the reasoning of that case applies equally to similar issues involving underinsured coverage since the underlying consideration for both the uninsured and the underinsured statutory provisions is to place the insured in the same position he would have occupied if the tortfeasor had carried adequate insurance. See *Sulser*, 147 Ill. 2d at 555.

In *Luechtefeld*, while the plaintiff was operating his motorcycle, he was injured when he was struck by an uninsured driver. The

motorcycle was insured under a policy with Pekin Insurance Company, which provided uninsured-motorist coverage with limits of $20,000 per person and $40,000 per accident. The plaintiff also was the named insured on a policy with Allstate that insured three vehicles owned by the plaintiff. The Allstate policy provided uninsured-motorist coverage of $100,000 per person/$300,000 per accident. The plaintiff received policy limits of $20,000 under the Pekin policy. However, since his injuries exceeded the $20,000 amount, he filed a claim with Allstate to collect under the uninsured-motorist provisions of that policy.

Allstate denied the claim on the basis of language in its policy that excluded coverage when the insured was in a vehicle insured for uninsured-motorist coverage under another policy. The plaintiff filed an action for declaratory judgment alleging, *inter alia*, that the above exclusion violated public policy. The trial court granted summary judgment to Allstate. However, the appellate court reversed, finding that the exclusion did violate public policy.

The supreme court granted leave to appeal and reversed the decision of the appellate court, concluding that the exclusion did not violate public policy. The court first noted that the legislative purpose was to place the policyholder in substantially the same position he would have occupied had he been killed or injured if the wrongful driver had had the minimum liability insurance required by the Illinois Vehicle Code. It then determined that the enforcement of the exclusionary provision in the Allstate policy would not violate the legislative purpose because, despite the exclusion, the plaintiff received the $20,000 in uninsured-motorist coverage that he would have received if the driver of the uninsured vehicle had obtained the minimum liability insurance required by law.

The supreme court then turned to the plaintiff's argument that under its decision in *Squire v. Economy Fire & Casualty Co.*, 69 Ill. 2d 167 (1977), when an insured purchases an insurance policy that includes uninsured-motorist coverage, that policy provides uninsured-motorist protection for any vehicle the insured owns or is injured in, even if the vehicle is insured under another policy. The plaintiff further argued that, under *Squire*, the payment of the premium to Allstate for uninsured-motorist coverage for one of his automobiles entitled him to coverage for any injury caused by an uninsured motorist, regardless of whether the injury occurred in a vehicle listed in the Allstate policy; otherwise, the premium he paid to Pekin was redundant and unnecessary.

The supreme court rejected the plaintiff's reading of *Squire*. The court pointed out that the policy at issue in *Squire* excluded

uninsured-motorist coverage whenever the insured was injured in a vehicle not listed in the policy *regardless of whether there was uninsured-motorist coverage on that second vehicle.* Thus, the enforcement of the exclusion could have left the insured without any protection against injuries caused by uninsured motorists in some circumstances. The court noted as follows:

> "The Allstate exclusionary clause does not deprive the plaintiff of uninsured-motorist coverage solely because the vehicle in which he was riding at the time of the accident was not listed in the Allstate policy. On the contrary, the exclusionary clause takes effect only if the insured is injured in a vehicle that has uninsured-motorist coverage under another policy." *Luechtefeld,* 167 Ill. 2d at 155.

What we glean from *Luechtefeld* is that an exclusion will not be deemed violative of public policy if it does not prevent the insured from being placed in the same position he would occupy, in the event of an accident, had the tortfeasor had the coverage required by law. The decision in *Luechtefeld* also makes clear that the payment of multiple premiums does not allow an insured to "stack" coverage where the exclusionary language only limits, but does not totally bar, recovery. Nor is public policy violated simply because the plaintiff pays multiple premiums for uninsured-(underinsured) motorist coverage but is limited under the policy to a single recovery. *Luechtefeld,* 167 Ill. 2d at 157-58.

■ Applying the reasoning of *Luechtefeld* to the cause before us, we conclude that the exclusion contained in the Buick policy violates public policy. The Buick policy excluded from underinsured motorist coverage any vehicle "furnished for the regular use of you, your spouse or any relative." In this cause, there is no dispute that the Mustang was a vehicle "furnished for the regular use of" Jennifer, who was a relative of the insured, as defined by the policy terms. Thus, had the Mustang not been covered by insurance or was underinsured, Jennifer could not have recovered under the Buick policy. Unlike the exclusion in *Luechtefeld,* the exclusion in the Buick policy here would operate regardless of whether or not there was underinsured-motorist coverage available under the Mustang policy. See *Luechtefeld,* 167 Ill. 2d at 155.

The difficulty in this cause is that the underinsured-motorist coverage available under the Mustang policy has placed Jennifer in the same position she would have occupied had Mr. Rebscher carried the same amount of insurance on his vehicle as was carried on the Mustang. Thus, the purpose of section 143a—2(4) has been satisfied under the particular facts in this cause. Nevertheless, since the exclu-

1020

sion in the Buick policy is not limited to those situations in which underinsurance coverage is available under another applicable policy, under our reading of *Luechtefeld*, the exclusion in the Buick policy is in violation of the public policy expressed in section 143a—2(4) of the Code because it could operate "in some circumstances" to leave the insured without any protection against an underinsured motorist. See *Luechtefeld*, 167 Ill. 2d at 155.

We reverse the order of the circuit court granting summary judgment to plaintiff, and this cause is remanded for the entry of an order granting Jennifer's motion for summary judgment.

The judgment of the circuit court of McHenry County is reversed, and the cause is remanded.

Reversed and remanded with directions.

BOWMAN and DOYLE, JJ., concur.