(No. 83036.—

STATE FARM MUTUAL AUTOMOBILE INSUR-
ANCE COMPANY, Appellant, v. JENNIFER VIL-
LICANA, Appellee.

*Opinion filed February 20, 1998.—Modified on denial of
rehearing April 8, 1998.*

BILANDIC, J., took no part.

HARRISON, J., joined by NICKELS, J., dissenting, as modified on denial of rehearing.

James J. Hoffnagle and Frank C. Stevens, of Taylor, Miller, Sprowl, Hoffnagle & Merletti, of Chicago, for appellant.

Baudin & Baudin, of Dundee (W. Randal Baudin and W. Randal Baudin II, of counsel), for appellee.

Williams & Montgomery, Ltd., of Chicago (David E. Neumeister, Barry L. Kroll, James K. Horstman, Nunzio C. Radogno and Lloyd E. Williams, Jr., of counsel), for *amicus curiae* Allstate Insurance Co.

CHIEF JUSTICE FREEMAN delivered the opinion of the court:

In this appeal, we must decide whether plaintiff, State Farm Mutual Automobile Insurance Company, is

obligated to provide underinsured motor vehicle benefits to defendant, Jennifer Villicana, pursuant to a State Farm insurance policy issued to her father. The circuit court of McHenry County determined that a "family car exclusion" contained in the policy barred coverage and granted summary judgment in favor of State Farm. The appellate court reversed the judgment, holding that the exclusion violated public policy. 286 Ill. App. 3d 1013. We subsequently granted State Farm's petition for leave to appeal (166 Ill. 2d R. 315) and allowed Allstate Insurance Company to file a brief as an *amicus curiae*. For the reasons that follow, we reverse the judgment of the appellate court.

## BACKGROUND

The undisputed facts which give rise to this case are relatively straightforward. On February 5, 1995, Jennifer Villicana suffered personal injuries while riding as a passenger in a car owned by her father, Bernard Villicana, and operated by Jay Rebscher. The single-vehicle accident occurred when Rebscher lost control of the car and hit a tree. State Farm insured the automobile under a policy issued to Bernard Villicana prior to February 1995. Pursuant to this policy, State Farm paid Jennifer $100,000, which represented the limit for bodily injury under the liability insurance provision of the policy insuring the accident vehicle. Rebscher's insurer, Coronet Insurance Group, also paid Jennifer $20,000, which represented the limit for bodily injury under the liability provisions of Rebscher's policy. Neither Rebscher nor Coronet is a party to this action.

At the time of the accident, Bernard Villicana owned another automobile (the "nonaccident" vehicle) that was also insured by State Farm under a separate policy. It is this policy which is the subject of the instant litigation. The policy provided liability and underinsured-motorist coverage in the sum of $250,000 per person/$500,000

per occurrence. Because Jennifer's damages allegedly exceeded the $120,000 provided to her under Rebscher's and Villicana's liability coverages, Jennifer filed a claim for the underinsured-motorist benefits under the nonaccident vehicle's policy. In the claim, Jennifer asserted that the injuries she had sustained in the February 5 accident were covered by the underinsured-motorist provisions of the policy.

State Farm denied the claim based on an exclusion contained in the policy and sought a determination of its obligations under the policy in the circuit court. Specifically, State Farm argued that an exclusion in the nonaccident vehicle's policy barred Jennifer from recovering any underinsured-motorist benefits. The relevant portions of the policy cited by State Farm provide the following:

"UNDERINSURED MOTOR VEHICLE—
COVERAGE W

You have this coverage if 'W' appears in the 'Coverages' space on the declarations page.

We will pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an underinsured motor vehicle. The bodily injury must be caused by accident or use of an underinsured motor vehicle.

\* \* \*

Underinsured Motor Vehicle—means a land motor vehicle:

1. the ownership, maintenance or use of which:

a. is insured or bonded for bodily injury at the time of the accident; and

b. has resulted in bodily injury of an insured; but

2. the limits of liability for bodily injury liability:

a. are less than the limits you carry for underinsured motor vehicle coverage under this policy; or

b. have been reduced by payments to per-

sons other than an insured to less than the limits you carry for underinsured motor vehicle coverage under this policy.

An underinsured motor vehicle does not include a land motor vehicle:

1. insured under the liability coverage of this policy;

2. furnished for the regular use of you, your spouse or any relative; ***."

The policy also provided the following definitions to certain of the terms used in the above-quoted provision:

"Relative—means a person related to you or your spouse by blood, marriage or adoption who lives with you. It includes your unmarried and unemancipated child away at school.

Spouse—means your husband or wife while living with you.

* * *

You or Your—means the named insured or insureds shown on the declarations page."

State Farm contended that because the accident automobile was "furnished for the regular use" of Bernard Villicana, his spouse, and Jennifer, as well as any other relative of Bernard or his wife, who lived with them, it could not be considered an underinsured motor vehicle under the policy.

In response, Jennifer argued that the exclusionary clause contravened the public policy behind the underinsured-motorist coverage, as set forth in section 143a—2(4) of the Illinois Insurance Code. Eventually both parties moved for summary judgment, which the circuit court granted in favor of State Farm. The court ruled that the exclusion barred Jennifer's recovery of any underinsured motor vehicle benefits. Jennifer appealed.

As noted previously, the appellate court reversed the judgment of the circuit court. In so doing, the court noted that the nonaccident vehicle's policy excluded

from coverage any vehicle " 'furnished for the regular use of you, your spouse or any relative.' " 286 Ill. App. 3d at 1016. Relying on this court's opinion in *Luechtefeld v. Allstate Insurance Co.*, 167 Ill. 2d 148 (1995), the appellate court reasoned that the exclusionary clause contained in the State Farm policy improperly prevents recovery regardless of whether underinsurance coverage is available under another applicable policy. 286 Ill. App. 3d at 1019. As a result, the clause contravenes the public policy represented in section 143a—2(4) because it could operate in some circumstances to leave the insured without any protection against an underinsured motorist. 286 Ill. App. 3d at 1020.

## ANALYSIS

The dispositive issue in this case is whether the policy's exclusion, commonly known as the "family car exclusion," bars Jennifer from recovering underinsured motor vehicle benefits. The exclusion prevents an automobile which is furnished for the regular use of an insured, the insured's spouse or any relative who lives with the insured from being deemed an underinsured motor vehicle. We must decide whether an underinsurance policy may exclude benefits to a family member who is injured in a *different* family automobile. We believe that under the limited circumstances of this case such an exclusion may be enforced.

We begin our discussion by noting that the construction of an insurance policy is a question of law subject to *de novo* review. *American States Insurance Co. v. Koloms*, 177 Ill. 2d 473, 479-80 (1997). In construing the language of an insurance policy, a court must ascertain and give effect to the intention of the parties as expressed in their agreement. *Koloms*, 177 Ill. 2d at 479. To that end, terms utilized in the policy are accorded their plain and ordinary meaning. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90,

108 (1992). We will apply those terms as written unless such application contravenes public policy. *Menke v. Country Mutual Insurance Co.*, 78 Ill. 2d 420, 423 (1980). In addition, a court must read the policy as a whole and consider the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract. *Koloms*, 177 Ill. 2d at 479. Provisions that limit or exclude coverage are to be construed liberally in favor of the insured and against the insurer. *Koloms*, 177 Ill. 2d at 497.

The parties agree that the exclusion in question, if enforceable, would bar recovery of the proceeds here. Their dispute centers on whether the exclusion inhibits the public policy underlying the underinsured motor vehicle statute. Accordingly, we must ascertain the public policy considered by our General Assembly when it enacted the statute. The Insurance Code defines an underinsured motor vehicle as

> "a motor vehicle whose ownership, maintenance or use has resulted in bodily injury or death of the insured, as defined in the policy, and for which the sum of the limits of liability under all bodily injury liability insurance policies or under bonds or other security required to be maintained under Illinois law applicable to the driver or to the person or organization legally responsible for such vehicle and applicable to the vehicle, is less than the limits for underinsured coverage provided the insured as defined in the policy at the time of the accident." 215 ILCS 5/143a—2(4) (West 1994).

Moreover, the Code requires that all automobile insurance policies provide underinsured-motorist coverage "in an amount equal to the total amount of uninsured motorist coverage" provided in the policy if the uninsured coverage exceeds the minimum limits mandated by law. 215 ILCS 5/143a—2(4) (West 1994). The statute, therefore, operates to mandate underinsured motor vehicle coverage once a consumer selects uninsured-motorist coverage which exceeds the statutory minimum

of $20,000 per person and $40,000 per occurrence. See 625 ILCS 5/7—203 (West 1994).

The foregoing statute defines an underinsured motor vehicle as one whose total amounts of applicable liability coverage are less than the underinsured coverage maintained by the insured at the time of the accident. Clearly, such legislation seeks to protect consumers from the risk that a negligent third party who carries only the minimum limits of liability will be unable to provide adequate compensation for the damages he or she inflicts upon the insured. Our review of the statute's legislative history confirms this observation—the legislature enacted the statute in response to what it perceived to be the inadequacies of uninsured-motorist coverage. As one member of the Illinois Insurance Laws Study Commission explained,

> "The purpose of underinsured motorist insurance is to put an injured insured in the same position after an accident with a financially responsible individual (but one who is carrying relatively low limits) as he or she would be with a financially responsible motorist.

> \* \* \*

> An insured with high limit uninsured motorist coverage is in a better position if injured by an uninsured motorist than if injured by an at-fault driver carrying minimum injury liability limits. \*\*\* The reason you have underinsured motorists coverage is once you agree that there ought to be high limit uninsured, you and I are better off being injured by an uninsured driver than we are by an insured driver. And so we have to make up this gap so that in the event of an injury by an at-fault driver we are in the same position regardless of whether he carries any insurance or minimum limits.

> \* \* \*

> \*\*\* [W]e are talking about putting our policyholder in the same position if he is struck by an insured low-limit driver as he is by an uninsured motorist. That is the purpose of underinsured motorist coverage." J. Bernstein,

March 21, 1980, a statement presented at the hearing of the Illinois Insurance Laws Study Commission.[1] This sentiment was echoed on the floor of the General Assembly when the proposed legislation was under debate. As one legislator stated, underinsured-motorist insurance was necessary so that consumers could have "the opportunity to protect [themselves] from at-fault drivers who carry only minimal amounts of liability insurance." 81st Ill. Gen. Assem., House Proceedings, June 20, 1980, at 48 (statement of Representative Epton). The Senate sponsor of underinsured motor vehicle coverage declared that it was a "new concept" which allowed "a person to insure over and above what the person who is at fault is insured against." 81st Ill. Gen. Assem., Senate Proceedings, June 27, 1979, at 327 (statements of Senator D'Arco).

In view of this legislative history, we have previously held that the legislature enacted both the uninsured and underinsured provisions so as to "place the insured in the same position he would have occupied if injured by a motorist who carried liability insurance in the same amount as the policyholder." *Sulser v. Country Mutual Insurance Co.*, 147 Ill. 2d 548, 558 (1992). Both the underinsured and uninsured motor vehicle provisions contemplate that consumers will select the total "package" of coverage, *i.e.*, liability, uninsured and underinsured, in amounts they *themselves* deem adequate

---

[1]The General Assembly convened the Commission to study the problems associated with uninsured- and underinsured-motorist insurance coverage. The Commission members included representatives of the insurance industry, trial lawyers, and consumer advocates. The meeting was open to members of both the media and the public. The General Assembly referred to the Commission's report during the legislative debates. See, *e.g.*, 81st Ill. Gen. Assem., House Proceedings, June 20, 1980, at 44-45 (statement of Representative Telcer); at 49-50 (statement of Representative Epton).

for their own protection as well as for the protection of their additional insureds. As such, underinsured motor vehicle coverage protects the insured and any additional insureds from the risk that a negligent driver of another vehicle (i) will cause injury to the insured or his additional insureds and (ii) will have inadequate liability coverage to compensate the injuries caused by his or her negligence. Stated differently, this type of coverage guarantees the protection of an injured insured against the possibility that a tortfeasor, over whom the insured has no control, purchases inadequate amounts of liability coverage.

Having ascertained the public policy underlying underinsured coverage, we must next apply it to the facts in this case. State Farm argues that the public policy considerations behind the underinsured motor vehicle statute do not come into play in the case. According to State Farm, although Rebscher was minimally insured, Jennifer received more than that amount by virtue of the insurance maintained on the accident vehicle by its owner, Bernard Villicana. State Farm contends that under these circumstances, the accident vehicle cannot be considered underinsured with respect to Jennifer because it is owned by the very holder of the underinsurance policy at issue who also happens to be the same person who voluntarily elected to purchase coverage of $100,000 on the accident vehicle in the first place. State Farm suggests that if this court were to allow recovery under these facts, we would be encouraging owners of multiple vehicles to purchase one policy with high limits of coverage and to insure the remaining vehicles with lower limits of coverage. In such a way, the higher policy could be used to enhance the liability limits of the lesser insured cars merely by paying the relatively low underinsured premium on the first car.

Jennifer, on the other hand, contends that the ac-

cident vehicle meets the statutory definition of an underinsured vehicle because the total amount of its applicable limits of liability are less than the limits of underinsured coverage available to her under the nonaccident vehicle's policy. She insists that any exclusion that limits coverage mandated by statute necessarily violates public policy. Although she concedes that the accident vehicle's liability coverage, purchased by her father, enabled her to recover an amount which exceeded the statutory minimum carried by Rebscher, Jennifer maintains that public policy is nevertheless contravened by this exclusion which, in her view, could operate in some circumstances to leave an insured without any protection against an underinsured motorist.

We acknowledge that Jennifer's argument is not without some surface appeal—her father insured the accident vehicle for liability in the amount of $100,000 per person/$300,000 per occurrence. Moreover, the car's permissive driver, Jay Rebscher, also carried insurance, albeit at the level minimally prescribed by law. As a result, the total amount of liability coverage applicable to the accident vehicle was $120,000, some $130,000 less than the limits of underinsured motor vehicle coverage available under the nonaccident vehicle's policy. After careful consideration, however, we deem that under the facts of this case, the argument advanced by State Farm more faithfully reflects the public policy behind underinsurance. The purpose of underinsured coverage is to put the insured in the same position he or she would have occupied had the at-fault vehicle carried liability coverage in the same amount as selected by the insured in his or her underinsured motor vehicle policy. We cannot ignore the fact that, in this case, the liability coverage available under the at-fault vehicle's policy was selected by the same person who selected the underinsured limits contained in the nonaccident vehicle's

policy. Although the accident vehicle carried a total package of coverage in the amount $100,000 per person and $300,000 per occurrence, Jennifer recovered benefits in excess of those limits. Moreover, although Rebscher was only minimally insured, Jennifer's recovery exceeded that amount. In our view, the accident vehicle's coverage protected Jennifer from the underinsured driver, and the purpose behind underinsured coverage has been satisfied. If Bernard Villicana wished to increase the coverage available for himself and his beneficiaries in the accident vehicle, he could have selected the same levels of coverage for that vehicle as he selected for the nonaccident vehicle. He freely chose not to do so. In this respect, we must point out that had Bernard or Jennifer been involved in an accident while driving the vehicle and if he or she were determined to be at fault, only $100,000 in coverage would be available to injured third parties. Jennifer here is attempting to recover more benefits when injured by her own family car than was made available to potential third parties injured by the same vehicle.

In our view, this was not the scenario that the legislature sought to prevent when it enacted the underinsurance statute. Underinsured coverage was not designed to provide consumers with protection from their *own* insurance decisions. Rather, the statute was enacted to afford consumers the means by which they could protect themselves from the choices of other drivers over which they had no control. Here, the amount of liability and underinsured coverage selected for the accident vehicle was a matter entirely within the control of Bernard Villicana in the first instance. Had Bernard wished to protect himself and his additional insureds from damages incurred while riding in the accident vehicle, he could easily have increased its liability coverage. See 3 A. Widiss, Uninsured & Underinsured Motorist Insurance § 33.6, at 93 (2d ed. Supp. 1997).

We note that the appellate court in this case also recognized that the purpose of the underinsured motor vehicle statute was satisfied under the circumstances present at bar. 286 Ill. App. 3d at 1020. Nevertheless, the court concluded that our decision in *Luechtefeld v. Allstate Insurance Co.*, 167 Ill. 2d 148 (1995), required it to invalidate the exclusion at issue here. We strongly disagree. In *Luechtefeld,* the insured received injuries when the motorcycle he owned and was operating was struck by an uninsured motorist. The motorcycle was insured under a policy issued by Pekin Insurance Company which provided uninsured-motorist coverage with limits of $20,000 per person/$40,000 per accident. The insured settled his accident claim against Pekin for the full $20,000 limit of uninsured-motorist coverage. The insured, however, was also the named insured in a policy issued by Allstate which covered three other automobiles that the insured owned. The Allstate policy provided uninsured-motorist coverage of $100,000 per person/$300,000 per accident. Due to the fact that the insured's damages exceeded the $20,000 settlement he received from Pekin, he filed a claim with Allstate, under the uninsured-motorist provisions contained in the Allstate policy. Allstate denied the claim based on an exclusion in the policy which barred coverage to "[a]ny person while, on, getting into or out of a vehicle you own which is insured for this coverage under another policy." *Luechtefeld,* 167 Ill. 2d at 151. The insured then filed an action for declaratory relief, seeking a determination of his rights under the Allstate policy. The circuit court granted summary judgment in favor of Allstate, finding the clause at issue unambiguously excluded the insured's motorcycle from coverage. The appellate court reversed the judgment because it deemed the clause to be contrary to public policy. *Luechtefeld,* 167 Ill. 2d at 150.

On appeal, this court upheld the validity of the

exclusionary clause under the facts of the case. We initially noted that the purpose of the uninsured-motorist statute is to place the insured policy holder in substantially the same position he or she would occupy if the uninsured driver had been insured at the statutorily mandated minimum. *Luechtefeld*, 167 Ill. 2d at 152. That purpose was not defeated by the application of the exclusionary clause in the Allstate policy because the insured received the statutorily mandated minimum coverage under his Pekin policy. Allstate's exclusionary clause, by its terms, was to take effect only if the policyholder already had uninsured-motorist coverage under another policy. In this regard, we noted that the insured, in fact, had uninsured coverage which equalled or exceeded the minimum sums established by the legislature. *Luechtefeld*, 167 Ill. 2d at 153. As a result, public policy concerns were satisfied under the facts of the case. In so holding, we rejected the insured's arguments that the exclusion would have prevented his recovery of benefits had his motorcycle been uninsured because "what *would* have been the outcome" under such a scenario was not an issue properly before us. (Emphasis in original.) *Luechtefeld*, 167 Ill. 2d at 157.

In our view, *Luechtefeld* compels our enforcement of the exclusion. The insured there, as in this case, sought to increase his recovery by looking to a second insurance policy which covered a nonaccident vehicle. An exclusion in the policy excluded from uninsured coverage vehicles owned by the insured and "insured for [uninsurance] under another policy." *Luechtefeld*, 167 Ill. 2d at 151. We upheld the exclusion because we determined that it did not contravene the public policy behind the uninsured-motorist statute. In so holding, we emphasized that it was the insured who voluntarily elected to purchase lower limits of uninsured-motorist coverage for his motorcycle than he selected for his other vehicles.

*Luechtefeld*, 167 Ill. 2d at 159. Indeed, our conclusion was premised on the fact that we did not wish to "encourage consumers to purchase adequate uninsured-motorist protection for one automobile and minimal or no uninsured-motorist protection for all other automobiles." *Luechtefeld*, 167 Ill. 2d at 159-60. This same reasoning applies with equal force to the facts presented at bar. Here, Jennifer seeks to augment her recovery by looking to a second policy which covers a vehicle not involved in the accident at issue. The liability insurance applicable to the accident vehicle exceeded the minimum, but did not equal the amount of underinsurance coverage available under the policy of the nonaccident vehicle. That result obtained because Bernard Villicana opted to provide only $100,000/$300,000 limits of liability for the accident vehicle. However, Bernard, as owner of both policies, was free to insure the accident vehicle at the same limits he selected for the nonaccident vehicle. Because the family car exclusion only operates to prevent the policyholder from creating a situation, *after the fact*, in which another vehicle for which he is legally responsible can be deemed "underinsured" with respect to himself or his additional insureds, we do not believe it contravenes public policy.

We note that our resolution of this issue is consistent with those reached by courts in a majority of the jurisdictions where the issue has arisen. See *Kim v. State Farm Mutual Automobile Insurance Co.*, 952 F.2d 314 (9th Cir. 1991) (interpreting Hawaii law); *Linder v. State Farm Mutual Automobile Insurance Co.*, 364 N.W.2d 481 (Minn. App. 1985); *Paylor v. Hartford Insurance Co.*, 536 Pa. 583, 640 A.2d 1234 (1994); *Kelly v. Nationwide Insurance Co.*, 414 Pa. Super. 6, 606 A.2d 470 (1992). Each of these cases involved a beneficiary of a nonaccident vehicle's underinsurance policy who attempted to claim underinsured benefits after being

injured in another car owned and insured by the same person who owned the underinsured policy. In each case, the courts enforced the family car exclusion despite claims that it contravened public policy.

For example, in *Paylor*, Betty and Fred Dymond were both killed when the motor vehicle owned and operated by Fred became involved in a single-vehicle accident. The Dymonds' daughter was appointed the administratrix of her mother's estate. At the time of the incident, the accident vehicle was insured under a policy issued by Foremost Insurance Company. The Dymonds also maintained policies on three other vehicles that they owned. These three vehicles were insured under one policy by Hartford Insurance Company. The administratrix recovered the limits of liability coverage under the policy issued by Foremost on behalf of her mother's estate. The administratrix then sought underinsured-motorist benefits under the Hartford policy. Hartford denied the claim, asserting the same family car exclusion at issue in the instant case. The Pennsylvania Supreme Court held the exclusion to be valid. The court concluded that the family car exclusion would not violate public policy in those cases where a plaintiff attempted to convert underinsured coverage into liability coverage. Because Betty Dymond was a named insured under both the Foremost policy which covered the vehicle involved in the single-vehicle accident and the Hartford Insurance policy covering the three other vehicles owned by the Dymonds, she made a conscious decision to insure the accident vehicle for substantially less coverage than they had obtained for the other automobiles. "To permit the decedent's estate to recover the underinsured coverage *** and void the family car exclusion *** is to allow the named insured's estate to convert inexpensively purchased underinsured motorist coverage for the family cars into liability coverage on [the accident vehicle]

when the decedent and her late husband freely chose to insure the [accident vehicle] for substantially less than the family's other vehicles." *Paylor*, 536 Pa. at 597, 640 A.2d at 1241.

Moreover, the fact that the claimant seeking the underinsured benefits is not the named insured of the policy insuring the accident vehicle is irrelevant to public policy concerns. In *Linder*, a minor was struck by a pickup truck owned by her father and driven by her brother. The minor collected under the full liability provisions maintained by her father on the truck, but did not collect underinsured motorist benefits under that policy. At the time of the accident, however, her father had an insurance policy which covered two other vehicles, which were not involved in the accident. The minor sought underinsured benefits under this second policy as a covered person under the policy's terms. The insurer denied the claim, citing an exclusion similar to the one at issue in this case. The court of appeals of Minnesota upheld the exclusion's validity, holding that the facts of the case were analogous to other cases in which an insured attempted to increase his or her liability coverage of one car by looking to the higher limits of coverage applicable to a second family car. Even though the minor argued that she was unable to purchase liability coverage herself, the court found itself "unable to rescue her from the decisions made by her family regarding the limits of liability insurance purchased." *Linder*, 364 N.W.2d at 483. See also 3 A. Widiss, Uninsured & Underinsured Motorist Insurance § 35.4, at 169-70 (2d ed. Supp. 1997) (noting that there exists little, if any, public policy which supports claims by individuals that coverage limits selected and paid for should be disregarded "even though persons other than the purchaser may be affected by the selection of coverage").

We further point out that several of the concerns expressed by the courts in the foreign authorities are particularly pertinent to our discussion of public policy. Underinsured motor vehicle coverage is a relatively inexpensive form of protection for consumers. To allow owners of multiple motor vehicles to utilize it as a substitute for paying a higher liability premium would increase the overall cost of underinsured coverage. Such a result is not without consequence. As one court has noted, the attendant "increase in cost would discourage consumers from purchasing underinsured coverage, an important protection presently available for a minimal cost." *Holz v. North Pacific Insurance Co.*, 53 Wash. App. 62, 66, 765 P.2d 1306, 1308-09 (1988).

Notwithstanding the above, Jennifer argues that the exclusion limits coverage otherwise mandated by statute and thus cannot stand. We disagree. An insurance policy is a contract between the company and the policyholder, the benefits of which are determined by the terms of the contract unless the terms are contrary to public policy. *Sulser*, 147 Ill. 2d at 558. We have determined today that the insurance contract at issue does not contravene the public policy implicit in the underinsured statute under the specific factual circumstances present in the case at bar. For this reason, the exclusion, which is both clear and unambiguous, must be enforced.

Finally, Jennifer maintains that the family car exclusion at issue in this case contravenes section 143.01 of the Insurance Code. Section 143.01 provides:

"(a) A provision in a policy of vehicle insurance described in Section 4 excluding coverage for bodily injury to members of the family of the insured shall not be applicable when a third party acquires a right of contribution against a member of the injured person's family.

(b) A provision in a policy of vehicle insurance excluding coverage for bodily injury to members of the family of

the insured shall not be applicable when any person not in the household of the insured was driving the vehicle of the insured involved in the accident which is the subject of the claim or lawsuit." 215 ILCS 5/143.01 (West 1994). Jennifer contends that because the accident vehicle was being driven by someone who was not a member of the household, the family car exclusion is inapplicable under the express terms of section 143.01(b). We disagree.

Initially, we note that the exclusion which was the focus of the General Assembly's attention in section 143.01(b) is commonly referred to as the family or household member exclusion. See 83d Ill. Gen. Assem., House Proceedings, May 3, 1984, at 32-33 (statement of Representative Dunn); 83d Ill. Gen. Assem., Senate Proceedings, June 21, 1984, at 121-22 (statement of Senator Berman). Such an exclusion operates to deny coverage for bodily injury to members of the insured's family when a person not in the household of the insured was driving the insured vehicle at the time of the accident. Simply stated, by invoking the exclusion, the insurer seeks to preclude coverage for bodily injury under the insured's policy to the insured's family members when a permissive drive operates the insured vehicle. In so doing, the insurer seeks to have the insurer of the permissive driver provide sole coverage for the claim. Pursuant to section 143.01, such an exclusion will be invalidated. Our review of the State Farm vehicle insurance policy at issue reveals that the policy contains express language within its liability provisions which specifically states that the family member exclusion "does not apply when *** any person not in the household of the named insured was driving the vehicle of the named insured involved in the accident which is the subject of the claim or lawsuit." Therefore, the policy in question did not contain the exclusion which the General Assembly sought to invalidate by enacting section 143.01(b). More important, the policy's underinsurance

coverage provisions do not contain any exclusion based on the fact that a person not in the household of the named insured operated the underinsured motor vehicle at the time of the accident at issue.

In our view, the family car exclusion at issue in this case is not an exclusion of coverage "for bodily injury to members of the family of the insured" as contemplated in section 143.01(b). Under the nonaccident vehicle's underinsurance policy, State Farm agreed to "pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an underinsured motor vehicle. The bodily injury must be caused by accident or use of an underinsured motor vehicle." We have held today that the accident vehicle in this case cannot be considered an underinsured motor vehicle for reasons of public policy. Jennifer was ineligible for the coverage, not because Ray Rebscher (a person not in the household of the insured) drove the accident vehicle, but because the accident vehicle was not an underinsured motor vehicle. The family car exclusion cited by State Farm in this case operates to remove from the definition of an underinsured motor vehicle any other vehicle owned by the insured, *regardless* of who is operating that vehicle at the time of the accident. As we have previously discussed, this exclusion prevents the owner of multiple vehicles from converting the underinsured motor vehicle coverage held on a nonaccident vehicle into additional liability coverage for the accident vehicle. We must reemphasize that Jennifer received the maximum amount of coverage for bodily injury available under the State Farm policy applicable to the accident vehicle. She received these benefits despite the fact that Ray Rebscher was driving the accident vehicle. Under these facts, section 143.01 does not come into play in this case because State Farm did *not* seek to exclude Jennifer from coverage for bodily injury. State Farm denied

underinsurance coverage in this case because the accident vehicle did not fall within the definition of an underinsured motor vehicle. Accordingly, section 143.01 is simply inapplicable to the facts presented for review in this case.

## CONCLUSION

The family car exclusion contained in the nonaccident vehicle's underinsured-motorist coverage does not violate public policy. We, therefore, reverse the judgment of the appellate court and affirm the judgment of the circuit court, which granted summary judgment in favor of State Farm.

*Appellate court judgment reversed;*
*circuit court judgment affirmed.*

JUSTICE BILANDIC took no part in the consideration or decision of this case.

JUSTICE HARRISON, dissenting, as modified on denial of rehearing:

I would hold that the family car exclusion in the nonaccident vehicle's underinsured-motorist coverage is inapplicable under the express terms of section 143.01(b) of the Illinois Insurance Code (215 ILCS 5/143.01(b) (West 1996)). Even if the statute did not resolve this case, however, and resort to public policy considerations were necessary, I still could not join in my colleagues' opinion.

Contrary to what the majority believes, its holding is not supported by our recent decision in *Luechtefeld v. Allstate Insurance Co.*, 167 Ill. 2d 148 (1995). Although the exclusion at issue in *Luechtefeld* was determined to be valid, this court stressed that its holding was narrow and distinguished the type of exclusion present in the case at bar. As the majority points out, the Buick policy in question in this case excluded from underinsured-

motorist coverage any vehicle "furnished for the regular use of you, your spouse or any relative." The Mustang was a vehicle furnished for the regular use of Jennifer and her parents and fell under this exclusion. Therefore, under this exclusion, had the Mustang been uninsured or underinsured, Jennifer could not have recovered anything under the Buick policy.

In contrast, the exclusion at issue in *Luechtefeld* stated that uninsured-motorist coverage did not apply to: " 'Any person while in, on, getting into or out of a vehicle you own which is insured for this coverage under another policy.' " *Luechtefeld*, 167 Ill. 2d at 151. The purpose behind both the uninsured- and underinsured-motorist statutes is to place the insured in substantially the same position he would occupy if the uninsured driver had carried adequate insurance. *Sulser v. Country Mutual Insurance Co.*, 147 Ill. 2d 548, 555 (1992). This exclusionary clause in *Luechtefeld* did not conflict with the purpose behind uninsured- and underinsured-motorist coverage because by its terms the clause only takes effect if the policyholder already has uninsured motorist coverage under another insurance policy. *Luechtefeld*, 167 Ill. 2d at 152-53. Therefore, a vehicle involved in an accident would still be assured some form of coverage. Unlike the exclusion in *Luechtefeld*, the exclusion in the Buick policy here would operate regardless of whether or not there was uninsured- or underinsured-motorist coverage available under the Mustang policy. The reasoning from *Luechtefeld* does not support the enforcement of an exclusionary clause which may leave an insured without any coverage against an uninsured or underinsured motorist, as the clause in the case at bar.

The majority neglects to point out that we criticized such an exclusion in *Luechtefeld*. The exclusionary clause at issue in *Squire v. Economy Fire & Casualty*

*Co.*, 69 Ill. 2d 167 (1977), was distinguished at great length by this court in *Luechtefeld*. In *Squire*, the insurance policy contained an exclusion which barred uninsured-motorist coverage for injuries incurred in an automobile that the insured owned but did not list in that insurance policy. *Luechtefeld*, 167 Ill. 2d at 154. We reasoned that enforcement of the exclusion in *Squire* could have left the insured without any protection against injuries caused by uninsured motor vehicles in some circumstances. *Luechtefeld*, 167 Ill. 2d at 154-55. Specifically, when an insured is injured in a vehicle not listed in the policy and there is no separate uninsured-motorist coverage on that second vehicle, under the exclusion contained in the *Squire* policy, such an insured would have no uninsured-motorist protection. In *Luechtefeld*, we concluded that "[b]y depriving the insured of uninsured-motorist coverage in some circumstances, the exclusion in *Squire* violated the statutory requirement in section 143(a) of the Illinois Insurance Code (215 ILCS 5/143(a) (West 1992)) that every automobile liability insurance policy provide uninsured-motorist coverage in the minimal amounts required under the Illinois Vehicle Code." *Luechtefeld*, 167 Ill. 2d at 155.

The exclusionary clause at issue in the present case is similar to the one in *Squire* because it prevents recovery regardless of whether there is uninsured- or underinsured-motorist coverage available on the second vehicle, the Mustang in the present case. As with the clause at issue in *Squire*, an insured would be deprived of underinsured-motorist coverage in some circumstances. Specifically, if there were no separate uninsured- and underinsured-motorist coverage on the Mustang there would be no protection. A clause that could operate in this manner violates the purpose behind the uninsured- and underinsured-motorist statutes of placing the insured in the same position he would have

occupied if the tortfeasor carried adequate insurance. Under this court's reasoning in *Luechtefeld,* such an exclusion is invalid on public policy grounds.

The majority argues that the Buick exclusion must be enforced, otherwise we would be encouraging consumers to purchase adequate uninsured- and underinsured-motorist protection for one automobile and minimal or no protection for all other automobiles. This situation can be avoided through the use of a more reasonable exclusionary provision such as the one we enforced in *Luechtefeld.* The exclusion in *Luechtefeld* was limited to those situations in which underinsurance coverage is available under another applicable policy. We should not enforce an unreasonable clause which violates public policy by operating in certain circumstances to leave the insured without any protection against an uninsured or underinsured motorist.

For the foregoing reasons, I would hold that the exclusion in the Buick policy is in violation of the public policy behind the uninsured- and underinsured-motorist provisions. The judgment of the appellate court should be affirmed.

Accordingly, I respectfully dissent.

JUSTICE NICKELS joins in this dissent.